UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:12-CV-00273

PAUL F. MIK, JR., ET AL.                                                             PLAINTIFFS

vs.

FEDERAL HOME LOAN MORTGAGE                                          DEFENDANT
CORPORATION

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant, Federal Home Loan Mortgage Corporation ("Freddie Mac"), for its Memorandum in support of its Motion to Dismiss the Complaint of Plaintiffs, Paul F. Mik, Jr., Lee Ann Mik, and PALS Enterprises LLC ("the Tenants"), states as follows:

**I.    STANDARDS FOR A MOTION TO DISMISS**

Freddie Mac's Motion to Dismiss Plaintiff's Complaint is based upon Fed. R. Civ. P. 12(b)(6), which permits this Court to nonsuit this case based upon the Tenants' failure to state a claim upon which relief may be granted. Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) whenever it is clear that no relief could be granted to the plaintiff under any set of facts that could be proven consistent with the allegations in the complaint. *See* Evans-Marshall v. Bd. of Educ., 428 F.3d 223, 228 (6th Cir. 2005).

In deciding a Rule 12(b)(6) motion, the court must determine whether the complaint sets forth sufficient allegations to establish a claim for relief. This Court must accept all allegations in the Complaint at "face value" and construe them in the light most

favorable to the Tenants. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983). Even with the benefit of such liberality, the Complaint must be dismissed because it contains no tenable claims.

## II. BACKGROUND

This is an action under the Protecting Tenants at Foreclosure Act ("the Act" or "the PTFA") (Pub. L. 111-22, Div. A, Title VII § 702, 123 Stat. 1632 (2009)) (codified at 12 U.S.C. § 5220 note). The PTFA protects tenants who reside in properties sold through foreclosure proceedings. It was enacted as a temporary measure to protect tenants "during a period when unprecedented numbers of foreclosures were occurring across the country." The Act "ensures that tenants receive appropriate notice of foreclosure and are not abruptly displaced." Protecting Tenants at Foreclosure Act: Additional Guidance on Notification Responsibilities under the Act with Respect to Occupied Conveyance, 77 Fed. Reg. 15,379 (March 15, 2012). The primary benefit afforded by the Act is the advance notice it provides to tenants who otherwise may be caught unawares as to the imminence of eviction after foreclosure of the landlord's mortgage. This protection was lacking under many state laws, including those of the Commonwealth of Kentucky, which generally permits termination of a lease without notice following a foreclosure sale. *See generally* Aleatra P. Williams, *Real Estate Meltdown, Foreclosures and Tenants' Rights*, 43 Ind. L. Rev. 1185 (2010).

## III. UNDISPUTED FACTS

In their Complaint, the Tenants allege that they occupied the property located at 202 Lees Lane, Brandenburg, Meade County, Kentucky ("Property"), pursuant to a lease with an option to purchase, which was granted to them by the former owner, Wanda Meyer, on October 15, 2010. Ms. Meyer defaulted on her mortgage loan, and her lender,

CitiMortgage, Inc. ("CitiMortgage"), initiated judicial foreclosure proceedings in the Meade Circuit Court.

The Tenants acknowledge that they were aware of the pending foreclosure and took defensive measures to preserve the lease. They recorded the lease on April 12, 2011, and sent written notice of the lease to CitiMortgage's foreclosure counsel on April 28, 2011. CitiMortgage was the successful bidder at the foreclosure sale and assigned its bid to Freddie Mac, before obtaining a writ of possession to place Freddie Mac in possession of the Property.

In June of 2011, the attorney for the Tenants attempted to negotiate a stay of the eviction. These efforts were unsuccessful, and the Tenants were served with a writ of possession on July 28, 2011. After an alleged lockout on August 8, 2011, during which the Tenants' furnishings purportedly were damaged, the Tenants purchased the Property from Freddie Mac in an arms-length transaction for $129,900.00, which was less than the $190,000.00 price proposed during their negotiations.

The Tenants concede that they knew about the foreclosure suit in April of 2011, prior to Freddie Mac's acquisition of title and more than three months before the alleged lockout; they were represented by counsel during the eviction; they were engaged in negotiations with counsel for CitiMortgage during the two months preceding the alleged lockout; they purchased the Property from Freddie Mac at a price that was at least $60,000 less than the previous asking price; and they presently own the Property. Their Complaint is silent as to the duration of the alleged dispossession; their efforts, if any, to defend the eviction proceeding by asserting the PTFA in state court; and their tender, if any, of rents either during the foreclosure or after the foreclosure sale (although the Tenants allege in paragraph 11 of their Complaint that they were willing to pay). The

Complaint confirms that the Tenants had actual knowledge that their lease was in jeopardy at least ninety days before they were presented with the writ of possession on July 28, 2012, and that they received the benefits of the option to purchase when they bought the property from Freddie Mac, notwithstanding the extinction of the underlying lease through the foreclosure sale.

IV. **LAW AND ARGUMENT**

    A. **The PTFA serves a limited and finite purpose.**

Under the PTFA, a person who acquires a foreclosed property assumes title subject to certain protections accorded to tenants under a "bona fide lease." These protections require the acquirer to: (i) furnish a notice to vacate to the tenant at least ninety days before the effective date of such notice; and (ii) allow the tenant to remain in the premises until the earlier of the termination of the lease (if the lease preexisted the transfer of title to the foreclosure sale purchaser) or the resale of the premises to a purchaser who will occupy the premises as his or her principal place of residence. Due to the extraordinary nature of the relief, which overrides state eviction laws, the Act originally was set to expire in 2012; however, under the Dodd-Frank Wall Street Reform and Consumer Protection Act, the sunset was postponed until December 31, 2014. Pub. L. 111–203, Section 1484, signed into law on July 21, 2010.

    B. **The PTFA does not create an express cause of action.**

The Act does not establish a private cause of action. There is no express provision for injunctive relief or for actual, punitive, or statutory damages, nor does the Act authorize an award of attorney's fees. As noted in <u>Martin v. LaSalle Bank Nat. Ass'n</u>, No. 10cv1775, 2011 WL 9583 (S.D. Cal. Jan. 3, 2011) "The statute itself does not provide for a private right of action." *See also,* <u>Gullatt v. Aurora Loan Services, LLC</u>,

No. 1:10-CV-001109, 2010 WL 4070379 (E.D. Cal. Oct. 18, 2010) ("Nothing in the express language of Section 702 contains a provision creating a right of action for violations of the section or establishes any remedy when the section is violated.").

The Act is regarded as a defensive measure; accordingly, it may be raised by a tenant to avert a state court eviction, but not to recover damages in federal court. Fannie Mae v. Lemere, No. CIV S-10-1474, 2010 WL 2696697, at *2 (E.D. Cal. Jul., 6, 2010) ("[F]ederal courts have held that the Protecting Tenants at Foreclosure Act of 2009 does not create a federal private right of action, but indeed provides directives to state courts"); Snyder v. Fed. Home Loan Mortg. Corp., No. C11-06213, 2011 WL 5121149 (N.D. Cal. Oct. 28, 2011) ("Courts considering the issue have consistently concluded that Section 702 does not provide a private right of action.… Rather, Section 702 creates federal defenses that may be asserted in an unlawful detainer action."). For this reason, courts routinely dismiss suits brought by aggrieved tenants under the PTFA. *See, e.g.*, Grayham v. Fannie Mae Corp., No. Civ. 11-6194, 2012 WL 89838 (D. Or. Jan. 9, 2012); Joel v. HSBC Bank USA, 420 F. App'x 928 (11th Cir. 2011); Ingo v. Deutsche Bank Nat. Trust Co., No. 2:11-cv-812, 2011 WL 5983340 (D. Utah Nov. 29, 2011); Cohn v. Bank of Am., No. 2:10-cv-00865, 2011 WL 98840 (E.D. Cal. Jan. 12, 2011); Shaikh v. Fannie Mae, No. 6:10-cv-1032-Orl-28GJK, 2010 WL 3734851 (M.D. Fla. Aug. 19, 2010).

The significance of the Act's silence concerning remedies was explained in Zalemba v. HSBC Bank, USA, Nat. Ass'n., as Tr. for MHL-200-1, No. 10-cv-1646, 2010 WL 3894577 (S.D. Cal. Oct. 1, 2010), as follows:

> There are no published decisions that discuss whether PTFA creates a private right of action. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (internal citation

omitted). "Instead, the statute must either explicitly create a right of action or implicitly contain one." Diaz v. Davis (In re Digimarc Corp. Derivative Litig.), 549 F.3d 1223, 1230 (9th Cir.2008).

Since the statute in this instance does not explicitly create a right of action, the only remaining inquiry is whether it does so implicitly. In answering this question, "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Alexander v. Sandoval, 532 U.S. 275, 286, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001).

### C. There is no implied cause of action under the PTFA.

Several federal courts have examined whether the PTFA gives rise to an implied cause of action. The standards for resolving this issue were enunciated by the U.S. Supreme Court in Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which was overruled in part by Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (discussed *infra*, p. 8). In Cort, the Supreme Court delineated the following four inquiries, the answers to which determined whether a private action was implied by federal statute:

1. Is the plaintiff a member of the class for whose benefit the statute was enacted?

2. Is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?

3. Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

4. Is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

In the leading case of Nativi v. Deutsche Bank National Trust Co., No. 09-06096, 2010 WL 2179885 (N.D. Cal. May 26, 2010), the U.S. District Court for the Northern District

of California followed Cort in reaching its decision that the PTFA does not implicitly authorize a federal cause of action.

Although the district court in Nativi found that the plaintiffs fell within the class of persons protected by the PTFA (*i.e.*, tenants who were harmed by the foreclosure crisis), the Congressional Record emphasized that the protections afforded by the PTFA were to be furnished by state courts. Indeed, the legislative history suggested that Congress purposefully avoided the creation of a new federal remedy. The court cited the following statement by Senator Gillibrand: "We have worked to expand foreclosure counseling services, provide homeowners with incentives to write down their debts, and to give *local governments and States* the tools they need to tackle this housing crisis." *Id*. at *3, citing 155 CONG. REC. S5096-7 (daily ed. May 5, 2009) (emphasis added). Thus, the second factor of the Cort analysis, *i.e.*, evidence of Congressional intent to create a federal cause of action, was lacking.

The district court also concluded that a separate federal cause of action would be inconsistent with the legislative scheme underlying the PTFA, thus negating the third element required under Cort. The court again relied upon the Congressional record, noting that, "Congress discussed the rights of the PTFA within the framework of the state judicial system." Id. at *4, again citing 155 CONG. REC. S5096-7 (daily ed. May 5, 2009). While the court in Nativi did not elaborate, its conclusion recognized that the PTFA's efficacy depends upon its assertion within the exigencies of state eviction proceedings.

With respect to the last inquiry under Cort, the court found that eviction actions traditionally fell within the province of state courts, which therefore were better suited to address the localized interests of tenants facing displacement. *Id*. at *4. After

determining that the PTFA did not implicitly create a federal cause of action, the court declined to exercise supplemental jurisdiction over the plantiffs' remaining state law claims. A similar application of the Cort factors resulted in the dismissal of a putative federal PTFA action in Ingo, *supra*.

Other decisions echo the conclusion reached in Nativi, while focusing primarily upon the second factor in Cort — Congressional intent. In Touche Ross, *supra*, the U.S. Supreme Court qualified its holding in Cort by explaining that the four factors delineated in Cort do not merit equal consideration. "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Id*. at 575. The remaining three factors "are relevant insofar as they assist in determining congressional intent." Parry v. Mohawk Motors of Mich. Inc., 236 F.3d. 299, 308 (6th Cir. 2000).

Thus, in Pacific Realty Inv. Group, Inc. v. Sprangler, No. C11-05303, 2011 WL 6020572, *1 (N.D. Cal. Nov. 16, 2011), the court observed that, "[T]he Supreme Court has effectively condensed the Cort analysis into a single factor — whether Congress expressly or by implication intended to create a private cause of action." After reviewing the Congressional Record, the court reached the following conclusion:

> The legislative history further emphasizes that the PTFA was intended to allow tenants who are victims of the foreclosure crisis a protection that can be used in the state courts to combat unlawful evictions. Based on this omission of any express private right, and the legislative history confirming that the statute's protections apply in response to state court evictions, the court must conclude a private right of action does not exist under the PTFA. Every other court identified by the undersigned to have considered the issue has found no private federal right of action in the PTFA.

*Id*. at *2 (footnotes omitted). The same result obtained in Logan v. U.S. Bank Nat. Ass'n, No.CV-09-08950, 2010 WL 1444878 (C.D. Cal. Apr. 12, 2010); Zalemba, *supra*;

Wells Fargo Bank v. Lapeen, No. C 11-01932, 2011 WL 2194117 (N.D. Cal. June 6, 2011); and Lopez v. DAPC LLC, No. C-12-01575, 2012 WL 2237227 (N.D. Cal. June 15, 2012), all of which relied upon legislative intent as the basis for finding no implicit cause of action within the PTFA.

        D.        **The nonexistence of a federal cause of action may be inferred from Congressional abstention.**

As the Supreme Court remarked in Touche Ross, *supra*, "Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Id*. at 572. This comment is borne out by federal consumer protection statutes, which often contain provisions for civil liability. *See, e.g.*, Truth in Lending Act, 15 U.S.C. § 1640 (2006); Fair Debt Collection Practices Act, 15 U.S.C. § 1692k (2006); and Telephone Consumer Protection Act, 47 U.S.C. §227(b)(3) (2006). Thus, the absence of any such provision in the PTFA furnishes additional support for judicial reluctance to entertain PTFA actions.

The decisions in both Logan and Zalemba, *supra*, depend upon the inferences that may be drawn from Congressional abstention. In Logan, the court examined the PTFA in the context of Emergency Economic Stabilization Act, 12 U.S.C. §§ 5201, *et seq*. (2009), of which it was a part. The Emergency Economic Stabilization Act established the Troubled Assets Relief Program ("TARP"), under which individuals may challenge actions of the Secretary of the Treasury in federal court. Although Congress subjected the Secretary's actions to judicial scrutiny, it declined to render foreclosure sale purchasers accountable to aggrieved tenants by means of an independent cause of action under the PTFA. These contrasting approaches within the same legislation lead the court in Logan to opine that, "By providing a cause of action against the Secretary of the

Treasury, but omitting reference to other causes of action, it appears that Congress did not intend to create a private cause of action for violation of Section 702's ninety-day notice requirement." Id. at *9.[1]

The court in Zalemba adopted the same approach. It discerned the legislative intent from the absence of any recourse provisions in PFTA, when contrasted with the private cause of action against the Secretary delineated under the TARP provisions. "As Congress expressly provided for the enforcement of TARP, it is 'highly improbable that "Congress absent mindedly forgot to mention an intended private action"' for other sections of the statute." Id. at *3 (citing Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19-20, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). See also, Aurora Loan Services, LLC v. Montoya, No. 2:11–cv–2485, 2011 WL5508926, n. 3 (E.D. Ca. Nov. 9, 2011) (also relying upon legislative context). It also is noteworthy that, when Congress extended the PTFA under Dodd-Frank in 2010, it again declined to prescribe a federal enforcement mechanism.

E. Federal courts routinely remand cases removed on the basis of the PTFA.

The judicial consensus regarding the impermissibility of federal PTFA claims also is reflected in a series of California cases involving the attempted removal of state eviction cases to federal district courts. Federal courts uniformly remand such actions. See, e.g., SD Coastline LP v. Buck, No. 10CV2108, 2010 WL 4809661 (S.D. Cal. Nov. 19, 2010); OP Development, Inc. v. Pascal, No. 1:11-cv-01363, 2011 WL 3687636 (E.D. Cal. Aug. 23, 2011); Federal Nat. Mortg. Ass'n v. Williams, No. S-11-3067, 2012 WL 28686 (E.D. Cal. Jan. 4, 2012); BAC Home Loans Servicing, LP v. Henry, No. CV 11-

---

[1] Logan is the subject of a pending appeal before the U.S. Court of Appeals for the Ninth Circuit. See Case No. -10-556710.

8623, 2012 WL 680274 (C.D. Cal. Feb. 29, 2012); Federal Nat. Mortg. Ass'n v. Brooks, No. CV12-00109, 2012 WL 773073 (C.D. Cal. Mar. 7, 2012); Deutsche Bank Nat. Trust Co. v. Antonino, No. CV11-10201, 2012 WL 893734 (C.D. Cal. Mar. 15, 2012); Federal Nat. Mortg. Ass'n v. Martinez, No. 1:12-cv-00363, 2012 WL 1552761 (E.D. Cal. May 1, 2012); and H & K Investments, LP v. Erfe, No. 2:12-cv-00938, 2012 WL 1657744 (E.D. Cal. May 10, 2012). These cases reflect the prevailing view that the PTFA does not raise a federal question.

Since the PTFA does not create a federal cause of action, it does not give rise to federal question jurisdiction under 28 U.S.C. § 1331; moreover, a federal defense does not constitute a predicate for removal.[2] As explained in Federal National Mortgage Ass'n v. Detmer, No. 1:12-cv-00550, 2012 WL 1435018, *2 (E.D. Cal. April 25, 2012), "Removal jurisdiction, however, cannot be based on a defense, counterclaim, cross-claim, or third-party claim raising a federal question, whether filed in state or federal court." *See also*, Logan, *supra*, in which the court applied the doctrine of abstention under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) as a rationale for dismissal of a PTFA claim instituted in federal court during the pendency of a state court eviction.[3]

---

[2] On a separate issue of federal subject matter jurisdiction, in this case the Court may entertain federal question jurisdiction ― not because the PTFA creates a federal cause of action ― but because Freddie Mac's enabling statute entitles Freddie Mac to invoke federal jurisdiction whenever it is sued. *See*, 12 U.S.C. § 1452(f) ("[A]ll civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions …"). This alternate basis for federal question jurisdiction does not avail the Tenants, however, because they still do not possess any underlying cause of action that this Court may enforce.

[3] The Tenants also assert federal jurisdiction based upon diversity of citizenship, as provided in 28 USC 1332. This assertion fails because Freddie Mac is not a citizen of any state, nor is it a citizen of a foreign state. Freddie Mac is a federally chartered, sponsored, and regulated corporation. Frank v. Bear Stearns & Co., 128 F.3d 919, 921 (5th Cir. 1997). It exists by virtue of 12 U.S.C. §§ 1451-1459 (1997), and is therefore "stateless" with respect to its citizenship.

F. **The Tenants' State Law Claims Fail as a Matter of Law.**

Although the Tenants allege various misdeeds, including denial of due process, wrongful eviction, interference with their right of quiet enjoyment, willful and wanton misconduct, and intentional infliction of mental distress, all are derivative of the underlying PTFA claim. If there is no private cause of action under the PTFA, all these related claims also fail, because they do not exist under state law. Apart from Freddie Mac's purported noncompliance with the PTFA, the alleged lockout was in conformity with all state requirements.

Under Kentucky law, the rights of a tenant typically are extinguished through a foreclosure sale.[4] This outcome is mandated by KRS 426.574, which provides that, "A conveyance made in pursuance of a sale ordered by the court shall pass to the grantee the title of all the parties to the action or proceeding." *See also* Cumberland Lumber Co. v. First & Farmers Bank of Somerset, Inc., 838 S.W.2d 403, 405 (Ky. App. 1992) ("It is settled … that one who acquires an interest in property, whether by purchase, lien or other encumbrance, after the filing of a lis pendens notice, takes that interest subject to the results of the litigation").

The principle that a foreclosure sale terminates preexisting interests, including any right of possession, is reinforced by Kentucky common law. *See* Castleman v. Belt, 41 Ky. (2 B. Mon.) 157, 160 (Ky. 1841) (holding that a mortgagee who acquires title through foreclosure may elect to treat occupants as trespassers or tenants from the date of the conveyance); Ball v. First Nat. Bank, 80 Ky. 501, 506-07, 4 Ky. L. Rptr. 400 (Ky.

---

[4] This is true regardless of whether the tenant is in possession pursuant to an unrecorded lease, a lease recorded after *lis pendens* attaches, or a lease recorded after a mortgage but before a foreclosure action (provided, in the third instance, that the tenant is joined in the suit). If the tenant's lease is recorded prior to the mortgage, the foreclosure may proceed subject to the lease. *See*, KRS 426.690, which requires the plaintiff in a foreclosure action to name all persons having recorded interests as defendants.

1882) ("The purchaser, from the confirmation, is entitled to a deed and writ of possession…."); Henderson v. Meadows, 290 Ky. 188, 160 S.W.2d 588 (Ky. 1942) (upholding the right of a foreclosure sale purchaser to enforce a writ of possession); Pembroke Rd. Warehouses, LLC v. Eagle Way AG, LLC, Nos. 2003-CA-001372–MR, 2003-CA-001373-MR, 2005 WL 2045815 (Ky. Ct. App. 2005) (holding that a tenant of a mortgagor had no rights as a holdover tenant vis-à-vis the foreclosure sale purchaser, since all leases terminated upon confirmation of the sale).

Since a tenant residing in a foreclosed property occupies the premises at sufferance, Kentucky courts customarily issue a writ of possession following confirmation of a foreclosure sale. This is done at the behest of the foreclosing mortgagee within the context of the original foreclosure suit. If a writ of possession is issued, the purchaser at the foreclosure sale need not institute an independent action for forcible entry and detainer. *See, e.g.*, Pemberton v. Hardin, 258 Ky. 538, 80 S.W.2d 589 (Ky. 1935); Henderson, *supra*. The Tenants' allegations suggest that this procedure was followed by CitiMortgage in the instant case. Upon receipt of the writ of possession, the Tenants could have asserted the PTFA in the state court foreclosure; however, they chose to negotiate a resolution that culminated in their purchase of the property.

V.     CONCLUSION

In this case, the Tenants had ample opportunity to raise the PTFA in state court, yet elected to forego the most expedient means of forestalling eviction. They could have intervened in the state court foreclosure action or filed an objection to the writ of possession. They did neither, notwithstanding their representation by counsel during the foreclosure proceedings.

Their Complaint is based upon alleged technical violations of the Act, although they otherwise enjoyed its intended benefits, *i.e.*, ninety-days notice of the probable termination of their lease and ample opportunity to find alternate housing. The Tenants invoke the Act as a strict liability statute. It was never intended to serve this purpose or to subject a foreclosure sale purchaser to damages; therefore, the Tenants' claims fail as a matter of law and must be dismissed.

Respectfully submitted:

Nielson & Sherry PSC

/s/ Amanda V. Green
Amanda V. Green, Esq.
Richard M. Nielson, Esq.
M. Elizabeth Hils, Esq.
639 Washington Avenue
Newport, Kentucky 41071-1971
Telephone: (859) 655-8466
Facsimile: (859) 655-8467
Email: rnielson@nsattorneys.com

*Counsel for Defendant Federal Home Loan Mortgage Corporation*

**CERTIFICATE OF SERVICE**

In addition to the parties who will be served electronically by the Court's ECF System, the undersigned certifies that a true and accurate copy of the foregoing was served by electronic mail on this 25th day of June, 2011, on the persons listed below:

Alan W. Roles, Esq.
Theodore J. Palmer
Attorneys for Plaintiffs
Coleman, Roles & Associates PLLC
1009 South Fourth Street
Louisville, Kentucky 40203

/s/ Amanda V. Green
Amanda V. Green, Esq.

*Counsel for Defendant Federal Home Loan Mortgage Corporation*
