UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

### CASE NO. 3:12-CV-00273-H

**PAUL F. MIK, JR., et al.,**                                                                              PLAINTIFFS,

vs,

**FEDERAL HOME LOAN MORTGAGE
CORPORATION,**                                                                                          DEFENDANT.

---

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant moves this Court for summary judgment on

Plaintiffs' remaining claim of wrongful eviction on the grounds that there are no genuine issues

of material fact, and Defendant is entitled to dismissal of Plaintiffs' claim as a matter of law.  In

support of this Motion, Defendant submits the attached Memorandum, along with the transcripts

of the depositions of the Plaintiffs and the exhibits to those depositions.

Respectfully submitted,

        /s/ Rick D. DeBlasis
Rick D. DeBlasis (KBA #92846)
Cynthia M. Fischer (admitted *Pro Hac Vice*)
LERNER, SAMPSON & ROTHFUSS
120 East Fourth Street, Suite 800
Cincinnati, Ohio  45202
Phone:  (513) 412-6614
Fax:  (513) 354-6765
rick.deblasis@lsrlaw.com
cynthia.fischer@lsrlaw.com

*Attorneys for Defendant,*
*Federal Home Loan Mortgage Corporation*

**MEMORANDUM**

## I.      PROCEDURAL POSTURE

Plaintiffs, PALS Enterprises, LLC ("PALS"), Paul F. Mik, Jr. and Lee Ann Mik, commenced this case against Defendant on May 23, 2012.  They allege that Defendant acquired by foreclosure sale certain real property in which the Plaintiffs were occupants and thereafter caused the county sheriff to set the Plaintiffs out of the property, in violation of the Protecting Tenants at Foreclosure Act of 2009, Pub. L. No. 111-22, § 702, 123 Stat. 1632, 1661 (codified at 12 U.S.C. § 5220 note (Supp. V. 2012)) ("PTFA").[1]  Plaintiffs claim that they were entitled to occupy the property until the end of their alleged lease and that they were, at the very least, entitled to a 90-day notice from Defendant before any set-out. *Complaint,* ¶ 32.  They filed suit for wrongful eviction, violation of due process, and outrageous conduct.

Defendant filed a Motion to Dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), arguing that the PTFA offered the Miks no private right of action, but was intended by Congress to be used defensively in the state court to prevent surprise evictions for "bona fide tenants" of properties in foreclosure until the end of their leases, so long as they paid the required rent. *Defendant's Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint,* pgs. 4-6.  The trial court agreed and dismissed the Complaint. (doc. 14)

The Sixth Circuit reversed, in part. *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149 (6th Cir. 2014).  It found that although the due process and outrageous conduct claims were properly dismissed, the Complaint stated a claim for wrongful eviction under state law, as

---

[1]  The PTFA expired by its own terms on December 31, 2014. *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, fn. 3 (6th Cir. 2014)

supplemented by the terms of the PTFA. *Id.,* at 167-68.  With regard to the PTFA claim, the

Sixth Circuit found as follows:

> Under Kentucky law, it appears that the Miks were not entitled to occupy the property after the foreclosure sale and that Freddie Mac complied with Kentucky law by obtaining a writ of possession in order to remove them. However, this is not the end of the matter.  We must consider the effect of the PTFA on the parties' rights and obligations.

*Id.,* at 163.

> The Miks allege that they occupied Meyer's home pursuant to a valid lease agreement.  They assert that under the PTFA, they had a right to remain in the home after the foreclosure sale, that Freddie Mac did not allow them to stay for the duration of their lease, and that Freddie Mac evicted them without providing 90 days' notice.  They contend that they were injured as a result of this eviction. The facts alleged by the Miks are plausible and support a claim for the tort of wrongful eviction.  Therefore, we reverse the district court's dismissal of the Miks' complaint with respect to this claim.

*Id.,* at 168.

Discovery having been completed, Defendant now moves this Court to dismiss Plaintiffs'

only remaining claim because there are no genuine issues of material fact, and Defendant is

entitled to a dismissal as a matter of law.  The undisputed facts demonstrate that Plaintiffs were

not "bona fide tenants," as required to entitle them to the protections of the PTFA.  Moreover,

Plaintiffs waived any rights they may have had under the PTFA by entering into a "Cash for

Keys Agreement" with Defendant prior to their eviction, and then they released any claims they

may still have had when they re-purchased from Defendant the home from which they had been

evicted.

## II.      STATEMENT OF FACTS

In the Spring of 2010, Wanda Meyer was the owner of real property located at 202 Lees

Lane, Brandenburg, KY 40108 (the "Property"). *Mik Depo.*, 9/9/14, pg. 92; *Complaint,* ¶ 8.  The

Property consisted of a lot with a home, as well as four unimproved lots surrounding the home.

*Mik Depo.*, 9/9/14, pgs. 92-95.   The home was encumbered by a mortgage with a principal balance of approximately $248,000.00; the lots were unencumbered. *Id.*   Ms. Meyer was elderly, in poor health, and had recently endured the death of her husband. *Id.*   She could no longer afford the mortgage payments. *Id.*   She sought to sell and contacted a local lawyer, who referred her to Plaintiff, Paul Mik. *Id.*   Paul Mik is and was, at all relevant times, a real estate broker and auctioneer in Brandenburg, Kentucky. *Mik Depo.*, 10/31/14, pgs. 137-38.

Mik advised Meyer that he could not sell the home for a price sufficient to retire the mortgage, but that he and his family would acquire the entire property. *Mik Depo.*, 9/9/14, pgs. 107-08.

> MR. MIK:  We decided that we'd be willing to buy a lease-option because you couldn't really do a land contract because we didn't know where the bank was going to wind up.
>
> Q.  Okay?
>
> MR. MIK:  So the best we could do was lease-option to buy what we could buy.
>
> Q.  Okay?
>
> MR. MIK:  That wasn't, you know, underwater as you say.
>
> Q.  Okay.
>
> MR. MIK:  So we drew up a sales contract, one we would lease-option the home and the grounds in it, and then we would cash her out on the ground we could cash her out on.

*Id.*

> MR. MIK:  . . . And at the time, like I said, I mean it was all over the news.  It was in all the trade journals.  The banks were short-selling.
>
>      So it was not illogical to think that I couldn't negotiate with the bank something less.
>
> Q.  I see.  So – so this was, so your way of – of making the purchase that you could acquire a home was to pay cash for the lots, I'm calling them lots again –

MR. MIK:  That's fine.

Q.  And then for the home do the lease-option so that you could get in and then try and do a short sale?

MR. MIK:  Well at least keep the payments current in the meantime.

*Id.,* pgs. 112-13.

As a result, on October 15, 2010, PALS, through its member, Paul Mik, entered into a contract with Wanda Meyer. *Mik Depo.*, 10/31/14, Ex. 1.  The contract, entitled "LEASE WITH OPTION TO BUY" ("Lease-Option"), provided for a lease of the Property, in exchange for rent at the rate of $1,000.00 per month, and an option for PALS to purchase the Property for $180,000.00 within the next two years. *Id.*  That same day, a Deed of Conveyance was executed between the same parties to effectuate a transfer from Wanda Meyer to PALS of the four lots surrounding the Property for the price of $12,000.00. *Id.*, Ex. 2.  Although the Lease-Option was between PALS and Ms. Meyer, Paul and Lee Ann Mik moved into the property.  PALS had no assets, except for real estate. *Mik Depo.*, 10/31/14, pgs. 134-35.

Before the Miks moved into the Property, they replaced doors, carpeting, the refrigerator, and ceramic tiles; they removed a wall and installed columns in the entry foyer. *Mik Depo.*, 9/9/14, pgs. 119-120.  These alterations were made to the home despite a provision in the Lease-Option prohibiting alterations. *Mik Depo.*, 10/31/14, Ex. 1.  Although the Lease-Option provided for occupancy to begin on January 1, 2011, Plaintiffs acquired possession of the home on October 15, 2010. *Mik Depo.*, 9/9/14, pgs. 114-15.

On April 11, 2011, Paul Mik learned from the county master commissioner that the Property was to be sold at foreclosure sale. *Id.,* pgs. 161-62.  Mik recorded the Lease-Option the next day and attended the foreclosure sale on April 20, 2011. *Id.,* p. 179; *Complaint,* ¶¶ 9, 12.

Neither PALS, nor the Miks, paid any further rent. *Mik Depo.*, 10/31/14, pgs. 116-17; *Complaint,*

¶ 11.  Although Plaintiffs now contend that they attempted to pay rent to the bank that bought the

Property at foreclosure sale, Paul Mik wrote to the bank's counsel on April 28, 2011, and

advised, "Currently, we hold a lease-option agreement on the property and very much wish to

purchase the property from the bank." *Mik Depo.*, 10/31/14, Ex. 4.  There is no mention in Paul

Mik's letter to bank counsel of any intent to pay rent. *Id.*

Neither PALS, nor the Miks, paid or tendered any rent for May, June, July, or August of

2011 (*Mik Depo.*, 10/31/14, pgs. 116-17), in contravention of the Lease-Option, which provides

for the removal of the tenant when rent is not received.  The relevant provision, found at

paragraph 5, states:

> DEFAULT BY LESSEE:  If the Lessee fails to pay the rent or the charges at the
> time, place, and in the manner provided, or if said Lessee shall otherwise make
> default in any of the covenants and agreements herein contained, Lessor or its
> agent or representatives by reason thereof, and hereby expressly authorized to
> declare the terms hereof ended, and reenter and repossess the leased premises,
> either with or without process of law, and expel the Lessee, agents, and
> employees claiming under said Lessee and remove their effects from said
> premises.

*Mik Depo.*, 10/31/14, Ex. 1.

CitiMortgage was the successful bidder at the foreclosure sale of the Property on April

20, 2011, and subsequently assigned its bid to Defendant. *Complaint,* ¶¶ 12, 13.  On June 15,

2011, Defendant obtained a writ of possession for the property. *Mik,* 743 F.3d at 155.  Five days

later, on June 20, 2011, the Miks signed a Relocation Assistance Agreement (the "Cash for Keys

Agreement"), whereby they agreed to leave the Property by July 25, 2011, in exchange for a

payment of $1,500. *Mik Depo.*, 10/31/14, Ex. 10.   The Miks, however, did not vacate the

premises. *Mik Depo.*, 9/9/14, pg. 230.  Despite having ample notice of the impending set-out, the

Miks remained in the Property until the set-out actually took place on August 8, 2011. *Mik depo.,*

9/9/14, pgs. 195-99; *Mik depo.,* 10/31/14, pgs. 268-72.

Less than two months later, on September 27, 2011, the Miks signed a contract to

purchase the Property from Defendant. *Mik Depo,* 10/31/14, Ex. 12.  The agreed purchase price

was over $100,000.00 less than Plaintiffs' own valuation of the Property. *Mik Depo.,* 10/31/14,

pgs. 211-12, 217-19.  Included in the purchase contract is the following clause:

> 13.  <u>INDEMNIFICATION</u>  Purchaser agrees to indemnify Seller and fully
> protect, defend and hold Seller, its tenants, agents, employees and contractors,
> harmless from and against any and all claims, costs, liens, loss, damages,
> attorney's fees and expenses of every kind and nature that may be sustained
> against Seller or any damage to the Property of any adjoining property, or any
> injury to Purchaser or any other persons that may result or arise out of inspections
> made by Purchaser or its agents, employees and contractors prior to closing.

*Mik Depo.,* 10/31/14, Ex. 12.  Because Plaintiffs were never *bona fide tenants* under the PTFA,

and because, in any event, they waived their rights to the protection of the PTFA in the Cash for

Keys Agreement and then later released any claims against Defendant when they re-acquired the

Property at a substantial discount, their wrongful eviction claim should now be dismissed with

prejudice.

## III.    THE SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs summary judgment proceedings and states, in

pertinent part, "[t]he court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  As recognized by the Sixth Circuit, "[t]he question is 'whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" *Scola v. Publix Supermarkets, Inc.,*

577 Fed. Appx. 458, 462 (6th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986)).

In order to demonstrate the absence of a genuine issue of material fact which would entitle the moving party to prevail upon its motion for summary judgment, the movant need not necessarily support its motion with evidentiary materials which directly negate his opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Rather, the movant may meet its burden by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Id.*  On a motion for summary judgment, a court views all evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013) (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  It is important to note, however, that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 247-248 (emphasis in original).

Here, the evidence is not subject to genuine dispute, and Defendant is entitled to judgment dismissing this case as a matter of law.

## IV.   ARGUMENT

### A.   Plaintiffs are not entitled to the protection of the PTFA because they were never "bona bide tenants" of the Property.

First, it is important to note that PALS, not the Miks, executed the Lease-Option with Wanda Meyer. *Mik Depo.,* 10/31/14, Ex. 1.  PALS had no employees, bank accounts, equipment, furniture, inventory, cash flow, or personal property of any sort; it did not have an office at the Property. *Mik Depo.,* 10/31/14, pgs. 134-35, 236-39.  Thus, any set-out could not have been conducted against PALS and could not have had any impact on PALS.  The Miks had no

contract concerning their occupancy, but occupied the Property through an unwritten arrangement with PALS. *Id.,* p. 237; *Complaint,* ¶ 8. Thus, the Miks were the only occupants, and their relationship was with PALS, not Wanda Meyer.

The PTFA's protections are limited to "bona fide tenants," defined as follows:

(b)   BONA FIDE LEASE OR TENANCY. – For purposes of this section, a lease or tenancy shall be considered bona fide only if –

(1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant;

(2) the lease or tenancy was the result of an arms-length transaction; and

(3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy.

*Protecting Tenants at Foreclosure Act of 2009*, Pub. L. No. 111-22, § 702, 123 Stat. 1632, 1661 (codified at 12 U.S.C. § 5220 note (Supp. V. 2012)).  The undisputed facts of the case at bar demonstrate that no occupant of the Property resided there as the result of an arms-length transaction and paid rent for the operative period.  Thus, none of the Plaintiffs can prove a claim against Defendant under the PTFA.

In circumstances similar to those of the instant case, a federal court in Texas found that the claimant seeking relief under the PTFA was not a *bona fide tenant*.  That court summarized the PTFA claimant's argument, as follows:

In July 2012, he purportedly signed a "6 month contract", which was set to expire on January 31, 2013, to purchase the Property from PEF Capital; he had been "purchasing the Property under a contract" by the date of the foreclosure sale.  He complains that he was never notified of the pending foreclosure and was not given "an option to dispute the debt or work out a ... modification" as provided by Title IV § 401.  He wants to "be able to buy the [Property], as [he] [had] been doing" prior to the foreclosure and his attempted eviction.

9

*Martinez-Bey v. Bank of Am., NA*, No. 3:12-CV-4986-G-BH, 2013 U.S. Dist. LEXIS 85440, *11 (N.D. Tx. May 22, 2013) (internal citations omitted). The court concluded that, because the claimant agreed to purchase the property prior to the foreclosure sale, he was not a bona fide tenant under the PTFA, and the fact that he was allegedly deprived of the opportunity to complete the purchase, or dispute or modify the debt on the property, did not entitle him to relief under the PTFA. *Id.*, *11-12.

In the case at bar, Plaintiffs were also attempting to purchase Wanda Meyer's property, and she intended only to sell. Although the parties' subsequent agreement is entitled "LEASE WITH OPTION TO BUY," the Court of Appeals of Kentucky will look to "[t]he purpose, rather than the name given a contract by the parties, . . . and the court will give effect to the real and dominant intention of the parties when definitely ascertained." *Trinity Temple Charities, Inc. v. Louisville*, 188 S.W.2d 91, 94 (Ky. App. 1945).

Plaintiffs first became aware of the Property when Wanda Meyer advised Paul Mik that she "wanted to sell" the Property. *Mik Depo.*, 9/9/14, pg. 92. Paul Mik, as a local real estate broker and auctioneer, had superior knowledge and bargaining position. Considering the mortgage debt, the Property value, and the lending environment, Paul Mik advised Wanda Meyer that the Property could not be sold on the market, but that he and his family would acquire the Property from Wanda Meyer by purchasing outright the contiguous unencumbered lots and entering a lease-option for the home until he could make certain improvements and negotiate a "short sale" with Ms. Meyer's bank. *Id.*, pgs. 107-12.

> A:    … And even though I'm going to live in it, which would make it worth more to me than if I had to rent it, but still it was too much.
>        …
> A:    So we drew up a sales contract, one we would lease-option the home and the grounds in it, and then we would cash her out on the ground we could cash her out on.

> …
> Q:      Okay.  So, so for you it was a mortgage loan, one mortgage loan for –
>         there were several lots, correct?
>
> A:      Right…
>         …
> A:      But in function and practice, people don't usually buy a house there with
>         two acres, they buy like we bought.

*Id.*, pgs. 106-110.  Indeed, in Paul Mik's view, the rental agreement was not a pure rental agreement, and the Miks held an equitable interest in the Property:

> Q:          And you did not own the house at the time, correct?
>
> Mr. Mik:    Equitable interest.
>
> Q:          You –
>
> A:          Lease with option, equitable interest.
>
> Q:          Okay.  So you had an equitable interest in the house.  It wasn't a
>             pure rental agreement?
>
> Mr. Mik:    Right.

*Mik Depo.*, 10/31/14, pgs. 188-89.

Not only did the parties' intent going into the contract reflect that of buyers and seller instead of landlord and tenant, but also Plaintiffs' actions during their occupancy of the Property reflected that of owners, and not of tenants.  As stated by the Miks during their deposition, numerous changes and alterations were made to the house:

> Q.      And then you started to make it livable?
>         …
> A.      The upper level we replaced the carpeting, we repainted…, we replaced all the
>         doors…
>         …
> A.      … we put a new refrigerator in
>         …
> A.      … ceramic tile in the kitchen.
>
> Q.      … Do anything structural to the place?

> …
>
> A.    We took the wall down in the foyer.
>
> …
>
> A.    …we removed the sidewall and front wall to open it up and we put the columns in.

*Mik Depo.*, 9/9/14, pgs. 115-119.  These alterations were made to the Property before Plaintiffs' contracted lease term with Ms. Meyer was even to begin, further illustrating that the terms of the contract do not reflect the intent of the parties. *Id.*, pgs. 119-120.

Further, the alterations were made in violation of the contract.   Paragraph 3 of the contract states as follows:

> MAINTENANCE OF PREMISES:  Lessee shall keep and maintain the leased premises in as good condition and repair as he finds the premises and shall return said premises to the Lessor *in the same condition as when delivered to the Lessee*, ordinary wear and tear expected.  Lessee shall be responsible for both minor and major repairs and maintenance and the cost of same.

*Mik Depo.*, 10/31/14, Ex. 1 (emphasis added).  The significant alterations made to the Property, which included structural changes, violated the plain language of the contract as found in this provision.

Moreover, any "short sale" that Paul Mik could have negotiated with Wanda Meyer's bank would have inured solely to the Miks' benefit, as Paul Mik had locked up Wanda Meyer with a specific purchase price for the Property.  Paul Mik took advantage of an opportunity he had gained in a fiduciary capacity (*Mik Depo.*, 10/31/14, pg. 138) to acquire the Property for his family on favorable terms.  Plaintiffs acquired the Property from Wanda Meyer at the option price of $180,000.00, put $22,000.00 in improvements into the Property, and acquired the surrounding lots for $12,000.00, for a total investment of $214,000.00.  Less than 10 months later, on August 5, 2011, in applying to a local bank for a loan to complete their purchase of the Property, the Miks listed the Property as an asset with a total value of $290,000.00 ($235,000.00

for the home and $55,000.00 for the lots). *Mik Depo.,* 10/31/14, Ex. 9.  If the Property were worth anything close to the value the Miks represented to their bank, then Paul Mik could have carried out Wanda Meyer's original wishes to sell the Property outright and negotiated any "short sale" with Wanda Meyer's mortgage lender for her benefit, instead of his.  In short, the Lease-Option was clearly not an arms-length transaction, as required for the protection of the PTFA.

Finally, the statutory definition of a "bona fide tenancy" as set forth above requires that the tenancy must include fair market rental payments. *PTFA, supra,* § 702(b)(3).  Courts interpret the statute as requiring payment of those rentals. *See, e.g., DLJ Mortg. Capital, Inc. v. Rosario,* Case No. 100233, 2014 Ohio App. LEXIS 1795, at *6 (Ohio Ct. App. May 1, 2014). Yet, for at least the four months preceding the set-out, Plaintiffs did not tender any rental payments, to Ms. Meyer or otherwise. *Mik Depo.,* 10/31/14, pgs. 241-42.  While Plaintiffs may argue that the failure to pay rent was because they did not know where to pay the rent, they knew how to contact the foreclosing bank's lawyer, as well as the representatives of the purchaser, Defendant Freddie Mac. *Mik Depo.,* 9/9/14, pgs. 175-86; *Complaint,* ¶¶ 11, 14.  Thus, Plaintiffs had the knowledge requisite to tender rental payments, but refused or otherwise failed to do so.

Paragraph 5 of the contract between PALS and Ms. Meyer provides as follows:

DEFAULT BY LESSEE:  If the Lessee fails to pay the rent or the charges at the time, place, and in the manner provided, or if said Lessee shall otherwise make default in any of the covenants and agreements herein contained, Lessor or its agent or representatives by reason thereof, are hereby expressly authorized to declare the terms hereof ended, and reenter and repossess the leased premises, either with or without process of law, and expel the Lessee, agents, and employees claiming under said Lessee and remove their effects from said premises.

Mik Depo., 10/31/14, Ex. 1.  Plaintiffs' numerous missed rental payments and violation of the premises maintenance paragraph of the contract each were defaults as described in this provision,

and were each grounds for the activation of this provision.  Plaintiffs were not paying fair market rent, and as such, they were not "bona fide tenants" entitled to PTFA protections.

> **B.**   **Even if the Miks were "bona fide tenants," which they were not, they waived all claims against Defendant in the "Cash for Keys Agreement."**

Kentucky courts have long applied the doctrine of waiver, as follows:

> A waiver has been defined to be the voluntary relinquishment of a right which one may enforce if he chooses; or the foregoing or giving up of some advantage the party would otherwise have enjoyed; an intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right.

*Central Life Ins. Co. v. Roberts*, 176 S.W. 1139, 1142 (Ky. App. 1915).  This longstanding principle of contract law was reaffirmed recently by the Kentucky Court of Appeals, noting that "[a] waiver may be either express or implied, although waiver will not be inferred lightly." *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. App. 2001).  The court further noted that, "[u]nlike estoppel or laches, waiver may be found in the absence of prejudice to the party asserting it." *Id.*

In the June 20, 2011, Cash for Keys Agreement, the Miks agreed to vacate the Property by July 25, 2011. *Mik Depo.*, 10/31/14, Ex. 10.  In exchange for vacating the Property, the Miks were to receive $1,500.00. *Id.*  The Miks were represented by counsel, who advised them to accept the offer. *Mik Depo.*, 9/9/14, pgs. 215, 218-22.  Despite their agreement to vacate the Property voluntarily, Plaintiffs did not do so, and ultimately they were removed from the Property on August 8, 2011.  By agreeing to vacate the Property voluntarily for consideration, Plaintiffs waived their rights under the PTFA.  As the Sixth Circuit held, "Freddie Mac complied with Kentucky law by obtaining a writ of possession in order to remove [Plaintiffs].  However, this is not the end of the matter.  We must consider the effect of the PTFA on the parties' rights and obligations." *Mik,* 743 F.3d at 163.

14

**C.** **Even if the Miks were "bona fide tenants," which they were not, and even if the "Cash for Keys Agreement" did not effect a waiver of their PTFA rights, which it did, the Miks settled and released any claim against Defendant when they purchased the Property from Defendant after the eviction.**

Plaintiffs settled and released any claim they may have had against Defendant arising from the eviction when they signed the agreement to purchase the Property two months later at a very substantial discount from their own appraisal. On September 14, 2011, the Miks agreed to purchase the Property from Defendant. *Mik Depo.*, 10/31/14, Ex. 12. On September 27, 2011, Plaintiffs signed a document entitled "Addendum #1 to Contract of Sale." *Id.* The Addendum begins by stating that "IN THE EVENT ANY PROVISION OF THIS ADDENDUM CONFLICTS IN WHOLE OR IN PART WITH THE TERMS OF THE CONTRACT OF SALE, THE PROVISIONS OF THIS ADDENDUM SHALL CONTROL." *Id.* Paragraph 13 of the Addendum states:

> 13.   INDEMNIFICATION   Purchaser agrees to indemnify Seller and fully protect, defend and hold Seller, its tenants, agents, employees and contractors, harmless from and against any and all claims, costs, liens, loss, damages, attorney's fees and expenses of every kind and nature that may be sustained against Seller or any damage to the Property of any adjoining property, or any injury to Purchaser or any other persons that may result or arise out of inspections made by Purchaser or its agents, employees and contractors prior to closing.

By this provision, Plaintiffs agreed to waive all claims they may have had against Defendant at the time they signed the addendum. They received more than adequate consideration for their waiver, because they acquired the Property, which they had valued at $235,000.00 on August 5, 2011 (*Mik Depo,* 10/31/14, Ex. 9), for $129,900.00, just over a month later. *Mik Depo,* 10/31/14, Ex. 12. Thus, Plaintiffs' wrongful eviction claim falls squarely within the scope of the indemnification provision, and Plaintiffs have expressly waived their right to pursue the present action. Defendant is entitled to judgment as a matter of law.

## V.  CONCLUSION

None of the Plaintiffs was a "bona fide tenant" under the PTFA.  The Miks were not parties to any lease with Wanda Meyer, and further were not subtenants or assignees under any lease.  PALS did not occupy the Property.  Moreover, the transaction with Wanda Meyer was not an arms-length lease, because the parties treated it as a sale and not a lease, and because Paul Mik took advantage of his superior knowledge and fiduciary position to acquire the Property from Wanda Meyer on terms favorable to his family.  Finally, the Plaintiffs failed to maintain the required rental payments.

In addition, the Miks waived any PTFA rights they might have had upon their signing of the Cash for Keys Agreement.  The Miks also settled and released all causes of action they might have had against Defendant upon their later purchase of the property from Defendant.

Without the protections of the PTFA, Defendant's eviction of the Miks "complied with Kentucky law," according to the Sixth Circuit.  Therefore, the eviction was not wrongful.  Because there exist no genuine issues of material fact, and Defendant is entitled to summary judgment as a matter of law, this Court should dismiss this action with prejudice.

Respectfully submitted,


/s/ Rick D. DeBlasis
Rick D. DeBlasis  (KBA #92846)
Cynthia M. Fischer (admitted *Pro Hac Vice*)
LERNER, SAMPSON & ROTHFUSS
120 East Fourth Street, Suite 800
Cincinnati, Ohio  45202
Phone:  (513) 412-6614
Fax:  (513) 354-6765
rick.deblasis@lsrlaw.com
cynthia.fischer@lsrlaw.com

*Attorneys for Defendant,*
*Federal Home Loan Mortgage Corporation*

16

## CERTIFICATE OF SERVICE

In addition to the parties who will be served electronically by the Court's ECF System, the undersigned certifies that a true and accurate copy of the foregoing was served by electronic mail on this 2nd day of March, 2015, on the persons listed below:

Hon. Alan W. Roles (alanwroles@yahoo.com)
Hon. Aaron Kemper
Coleman, Roles & Associates PLLC
1009 South Fourth Street
Louisville, Kentucky 40203

_____/s/ Rick D. DeBlasis_____
Rick D. DeBlasis