UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CASE NO. 3:12-CV-00273-H

**PAUL F. MIK, JR., et al.,** PLAINTIFFS,

vs.

**FEDERAL HOME LOAN MORTGAGE CORPORATION,** DEFENDANT.

___

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
___

Plaintiffs contend that they were "bona fide tenants" of Wanda Meyer and that they were wrongfully evicted by Defendant when it purchased Ms. Meyer's property at foreclosure sale. The Sixth Circuit found that Defendant's eviction complied with Kentucky law, but remanded the case to this Court to determine whether the Protecting Tenants at Foreclosure Act ("PTFA") changes that result. The PTFA protects only "bona fide tenancies" resulting from "arm's length transactions." Viewing the circumstances of Plaintiffs' acquisition of the property from Wanda Meyer, it is clear that Plaintiffs do not qualify for the protections of the PTFA. Their sole remaining claim should be dismissed.

At oral hearing on Defendant's Motion for Summary Judgment (Doc. 49), several issues were addressed by the Court and counsel, which prompted the Court to offer the parties the opportunity to file supplemental, simultaneous briefs. *See,* Doc. 61. First, Plaintiffs claim that Defendant raised new issues in its Reply Memorandum in Support of Motion for Summary

Judgment (Doc. 59). Defendant contends that the arguments in its Reply Memorandum were not new issues, but proper replies to Plaintiff's Response Brief (Doc. 57). Moreover, the Court's allowance of this additional briefing opportunity moots Plaintiffs' claim in this regard.

Second, Plaintiffs argued at hearing that Wanda Meyer was represented by counsel when she and Plaintiffs entered the Lease Option Agreement. Defendant countered that the attorney who drafted and supervised execution of the Agreement represented Plaintiffs, although the representation was conflicted.

Third, Defendant argued that statutory construction of the PTFA's applicable provision requires the Court to consider all the circumstances in determining whether Plaintiffs' relationship with Wanda Meyer was a "bona fide tenancy." Plaintiffs counter that the Court should narrowly construe the statute's requirements.

The PTFA provides that "a lease or tenancy shall be considered bona fide only if: (1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant; (2) the lease or tenancy was the result of an arms-length transaction; and (3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy." *Protecting Tenants at Foreclosure Act of 2009,* Pub. L. No. 111-22, § 702, 123 Stat. 1632, 1661 (codified at 12 U.S.C. § 5220 note (Supp. V. 2012)).

When all the circumstances are considered, Plaintiffs relationship with Wanda Meyer clearly was not a "bona fide lease or tenancy." Therefore, Plaintiffs are not entitled to the protections of the PTFA. For these reasons, as well as those stated in Defendant's Motion for Summary Judgment (Doc. 49) and Reply in Support (Doc. 59), Defendant is entitled to dismissal of Plaintiffs' sole remaining claim of wrongful eviction.

1. **<u>Defendant did not raise new issues in its Reply in Support of its Motion for Summary Judgment. Moreover, any such argument is now moot.</u>**

Plaintiffs first object to Defendant's argument in its Reply Memorandum that focuses on the fact that the Lease-Option is between Wanda Meyer and PALS, and not the Miks. Plaintiffs now argue that this issue was not raised in Defendant's original Motion for Summary Judgment, and should not now be considered. Contrary to Plaintiffs' objection, this was the first substantive point made by Defendant in its Motion for Summary Judgment, where Defendant stated: "First, it is important to note that PALS, not the Miks, executed the Lease-Option with Wanda Meyer." (Doc. 49, Page ID #831). Defendant raised this point as one piece of undisputed evidence that shows that the Miks were not bona fide tenants under the agreement with Wanda Meyer. Defendant further noted, in its original motion, that PALS had no employees, bank accounts, equipment, furniture, inventory, cash flow, or personal property. (*Id*., Page ID #831-32). Moreover, the fact was not original with Defendant. Plaintiffs alleged in their Complaint that "[PALS] entered into a lease agreement with Wanda Meyer[,]" and "Plaintiffs Paul F. Mik and Lee Ann Mik were living in the premises leased by [PALS]." (Doc. 1, ¶ 8).

In its Reply in Support, Defendant simply expanded on this argument and replied to the mistaken claims in Plaintiffs' Response, in which they claimed that, "'There can be no other interpretation of the lease/option agreement entered into by the Miks and Wanda Meyer.'" (Doc. 59, Page ID #898 (quoting Doc. 57, Page ID #878)). Throughout their Response Brief, Plaintiffs repeatedly relied on a lease agreement between the Miks and Wanda Meyer that does not exist. The Miks are not lessees under the agreement with Wanda Meyer, nor are there any provisions in the Lease-Option that apply to them as individuals. (*Id*.). Defendant properly expanded on this argument in its Reply in Support.

Plaintiffs also claimed at oral argument that Defendant's Reply Memorandum was the

first instance where Defendant argued that Kentucky's Uniform Residential Landlord Tenant Act ("URLTA") did not apply. Notably, it was Plaintiffs who first raised the URLTA in responding to Defendant's Motion for Summary Judgment, as they did not mention the URLTA in their Complaint (Doc. 1). Defendant only raised this argument in its Reply to explain that the URLTA did not apply to this case, and that the Sixth Circuit had already found that the eviction complied with Kentucky law. Simply replying to Plaintiffs' argument, raised for the first time in their Response Brief, and explaining why Plaintiffs' reliance on the URLTA was misguided, is not an attempt to raise a new issue. *See Asbury v. Teodosio*, 412 Fed. Appx 786, 792 (6th Cir. 2011) ("The Court Defendants' reply brief does nothing more than reply to the allegations made in Asbury's response and elaborate on the arguments made in their original motion…. Asbury's contention regarding the contents of the Court Defendants' reply brief is without merit.").

Finally, even if Defendant raised new substantive arguments in its Reply, which it did not, Plaintiffs have not been prejudiced as they have this opportunity to respond in writing to any alleged new issues. The Sixth Circuit has noted that supplemental filings, such as sur-replies, "may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Key v. Shelby Cty.*, 551 Fed. Appx 262, 265 (6th Cir. 2014) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). As a result, Plaintiffs have been "accorded an adequate opportunity to respond to [any] new evidence [or arguments] presented with [Defendant's] reply brief[]." *Seay v. Tenn. Valley Auth.,* 339 F.3d 454, 481 (6th Cir. 2003).

### 2. **Plaintiffs, and not Wanda Meyer, were represented by legal counsel during negotiation and execution of the Lease-Option between PALS and Meyer.**

At oral hearing, an issue arose regarding the representation of the parties by attorney Alec Stone. This issue relates to Defendant's claim that any tenancy between the Miks and Wanda

4

Meyer was not the result of an "arms-length transaction," as required to earn the protections of the PTFA. Regarding this argument, Defendant stated in its original Motion for Summary Judgment:

> Moreover, any "short sale" that Paul Mik could have negotiated with Wanda Meyer's bank would have inured solely to the Miks' benefit, as Paul Mik had locked up Wanda Meyer with a specific purchase price for the Property. Paul Mik took advantage of an opportunity he had gained in a fiduciary capacity (*Mik Depo.*, 10/31/14, pg. 138) to acquire the Property for his family on favorable terms. * * *

(Doc. 49, Page ID # 835-36).

Quoting Black's Law Dictionary, the Kentucky Court of Appeals has stated that, "An arm's length transaction is defined as: '1. A transaction between two unrelated and unaffiliated parties. 2. A transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises.'" *Transp. Cabinet, Dep't of Highways v. Watts*, Case No. 2010-CA-000313-MR, 2011 Ky. App. Unpub. LEXIS 830, *19 (Ky. App. Nov. 10, 2011) (quoting Black's Law Dictionary (9th ed. 2009)). Mr. Mik's fiduciary relationship to Wanda Meyer, combined with Alec Stone's conflicted representation, render the Miks' "tenancy" less than arm's length.

In their Response to Defendant's Motion for Summary Judgment, Plaintiffs disputed Defendant's claim that Paul Mik was Wanda Meyer's fiduciary, in part, by their statement that, "Her attorney [Mr. Stone] came to Mr. Mik, who holds an auctioneer's license, to see whether he could auction off her property to pay off her mortgage." (Doc. 57, Page ID #882). However, this statement was not supported by Paul Mik's own testimony.

At his first deposition, regarding the creation of PALS and his relationship with Alec Stone, the attorney that drafted the Lease-Option, Paul Mik testified:

**Mr. Mik:** I didn't do it on my own, it was done, you know, with the recommendation of

5

> counsel.
> Q. Okay.
> **Mr. Mik:** I didn't do it – I didn't wake up one morning say I think I'll form another LLC.
> Q. Okay. Who – who – who was counsel?
> **Mr. Mik:** Alec Stone.
>
> * * *
>
> Q. Okay. And is that someone who had done some legal work for you before the LLC or that your relationship –
> **Mr. Mik:** We're friends and –
> Q. Okay.
> **Mr. Mik:** I mean, whatever, that kind of thing, you know?
>
> * * *
>
> **Mr. Mik:** There's a lot of – and he was, he was a friend and if I needed legal advice, I'd see him for that. That sort of thing.
> Q. Okay. So he recommended to you that your start a LLC?
> **Mr. Mik:** Yeah.

(Doc. 47-1, *Mik Depo.,* 9/9/14, Page ID #309, pp. 90-91). As it concerns how Paul Mik learned about the property, Paul Mik further testified:

> Q. Okay. Well, let me slow you down. So – so how did you become aware that she want – Ms. Meyer wanted to sell?
> **Mr. Mik:** I think she had said Alex said for her to call me because I think she – her husband had died, her son-in-law had died, and of course she was having trouble making payments and wanted to sell the home.
> Q. Okay.
> **Mr. Mik:** And so I went and looked at the house.
> Q. So she contacted Alec Stone?
> **Mr. Mik:** I mean I assume that she did.
> Q. Okay. Well, where – I mean—so you heard about it from some place –
> **Mr. Mik:** She called.
> Q. Okay.
> **Mr. Mik:** She made contact.

(*Id.*, Page ID #310, pp. 93-4). Therefore, it was Wanda Meyer who contacted and interacted directly with Paul Mik in regards to her plans to sell the property. Paul Mik, as a local real estate broker and auctioneer, had superior knowledge and bargaining position. Considering the mortgage debt, the Property value, and the lending environment, Paul Mik advised Wanda Meyer that the Property could not be sold on the market, but that he and his family would acquire the

6

Property from Wanda Meyer by purchasing outright the contiguous unencumbered lots and entering a lease-option for the home until he could make certain improvements and negotiate a "short sale" with Ms. Meyer's bank. (*Id.,* Page ID #313-14, pp. 107-12).

Throughout their Response, Plaintiffs seek to downplay the trust relationship between Wanda Meyer and Paul Mik by claiming that Alec Stone represented Wanda Meyer during the transaction. However, in his first deposition, Paul Mik testified:

> **Mr. Mik:** So we drew up a sales contract, one we would lease-option the home and the grounds in it, and then we would cash her out on the ground we could cash her out on.
> Q. Okay?
> **Mr. Mik:** And I didn't remember the dates. You got the dates right here.
> Q. So you were talking to Alec Stone about it. Was he representing you in the transaction?
> **Mr. Mik:** I don't know if he was actually – yeah, I was he was telling us what to do.
> Q. Okay?
> **Mr. Mik:** And, I mean, he draw up the lease contract lease-option.

(*Id*., Page ID # 313, pp. 107-08). At his second deposition, Mr. Mik testified:

> Q. Okay. Now, this document was prepared by Alec Stone, correct?
> **Mr. Mik:** Yes, sir.
> Q. And he was your attorney at the time?
> **Mr. Mik:** Yes. No. He was in between, I guess. He was Wanda's and ours.
> Q. Well, you're both – you're on opposite sides of this transaction.
> **Mr. Mik:** Well, he was more – he drew the document up and it was a real estate deal. It wasn't a –
> Q. And – and who – who give him the instructions on what type of document to draw up?
> **Mr. Mik:** It was just – I don't guess anybody gave him instructions. I guess it's how he drafted it.
> Q. How did he find out what to draft?
> **Mr. Mik:** I mean terms, we told him the terms, and Wanda –
> Q. Who's we?
> **Mr. Mik:** Wanda and me and Lee Ann.

(Doc. 48-1, *Mik Depo.,* 10/31/14, Page ID #466, pp. 243).

Finally,

> Q. Okay. Did you have any attorney's fees, did you pay Mr. Stone?
> **Mr. Mik:** I don't know if there were. I'm not going to – $150 or something to draw a document up. I mean it wasn't negligible, it wasn't –
> Q. Okay?
> **Mr. Mik:** Nothing outrageous.
> Q. Okay. Did you pay Mr. Stone or did Wanda pay Mr. Stone?
> **Mr. Mik:** Wanda certainly didn't pay him.
> Q. Okay?
> **Mr. Mik:** If he was paid, we paid him.

(Doc. 47-1, *Mik Depo.,* 9/9/14, Page ID #317, pp. 123-24).

Under this testimony, it is clear that Alec Stone was representing Plaintiffs. He may have misled Wanda Meyer by giving the impression that he was representing her too. In any event, this was not an arm's length transaction. *See Rome v. Braunstein*, 19 F.3d 54, 61 (1st Cir. 1994) ("On the contrary, simultaneous representation of the buyer and the seller in the same transaction is a prototypical disqualifying conflict of interest even if it is not invariably disqualifying in all circumstances."). "It is equally established that all transactions in which the agent has either acted for himself or for a party whose interest is adverse to his principal are voidable by the principal and may be repudiated by the principal without a showing that he was injured." *Beasley*, 677 S.W.2d at 894 (citing *Ferguson v. Gooch*, 94 Va. 1, 26 S.E. 397 (1896); Restatement (Second) of Agency § 313 (1958)).

3. **Statutory construction of the applicable term of the PTFA require that this Court look to the full circumstances of the parties' relationship to determine whether the arrangement was a "bona fide lease or tenancy."**

As set forth above, the PTFA states that "a lease or tenancy shall be considered bona fide **only if**: (1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant; (2) the lease or tenancy was the result of an arms-length transaction; and (3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy."

8

*PTFA, supra* (emphasis added)). At oral hearing, Plaintiffs argued that so long as they were not the mortgagor or the child, spouse, or parent of the mortgagor, and their deal with Wanda Meyer required rent of $1,000 monthly, they qualified as bona fide tenants under the PTFA. Defendant argued that Congress' choice of the words "only if" preceding these qualifications meant that these attributes constituted the floor for a claim of bona fide tenancy, but that the Court should look to all the circumstances of the arrangement in determining whether Plaintiffs deserved the protection of the PTFA.

"'Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 549 (6th Cir. 2012) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985)). "'[I]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 624 (6th Cir. 2013) (quoting *Greenbaum v. EPA*, 370 F.3d 527, 535 (6th Cir. 2004) (additional citations omitted)).

"'Plain meaning is examined by looking at the language and design of the statute as a whole.'" *Nat'l Air Traffic Controllers Ass'n v. Sec'y of the DOT*, 654 F.3d 654, 547 (6th Cir. 2011) (quoting *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008)). "In doing so, [a court] must 'giv[e] effect to each word and mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" *Id*. (quoting *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998) (additional citations omitted)).

As emphasized above, the PTFA contains the phrase "only if" as opposed to the single

word "if." The use of this specific language indicates that additional factors can impact the determination whether a lease or tenancy is truly "bona fide." While the three requirements listed in the language of the act must be present, this Court must look beyond these simple requirements to determine whether the agreement between PALS and Wanda Meyer allows the Miks to use the PTFA to support their claim against Defendant. Such a view of all the circumstances allows the Court to void other types of "preferential" arrangements, such as where a mortgagor on the eve of foreclosure sale issues a long-term lease-option to a friend or relative (not his child or parent) to frustrate the lender's ability to market its collateral. So long as the contract is not with the mortgagor, nothing in the text of the statute would prevent the mortgagor from continuing in occupancy of the property.

In this case, the Miks did not have an arrangement with Wanda Meyer. Only PALS entered the contract. *See Henry v. U.S. Bank, N.A.,* No. 14-10392, 2014 U.S. Dist. LEXIS 115294, *21 (E.D. Mich. July 21, 2014) ("Notably, only bona fide leases are protected under PFTA."). Paul Mik, a sophisticated real estate investor, broker, and auctioneer, set up PALS as a separate corporation to gain certain economic and legal advantages.

Moreover, the Miks never treated the arrangement as a tenancy or leasehold. Instead, <u>before they moved in</u>, and before they became obligated to pay any rentals, the Miks acquired possession, replaced doors, carpeting, the refrigerator, and ceramic tiles, removed a wall and installed columns in the entry foyer. (Doc. 47-1, *Mik Depo.,* 9/9/14, Page ID #316, pp. 119-120). Rather, Paul Mik saw an opportunity to gain value for himself by paying cash for the contiguous lots, renovating the home before moving in, and acquiring inside information regarding Wanda Meyer's mortgage issues so he could effect a "short sale" directly with Wanda Meyer's lender to achieve a windfall, not for Wanda Meyer, but for himself, as the purchase price to be paid to Ms.

10

Meyer was already in ink.

In Paul Mik's view, the Miks held an equitable interest in the property. (Doc. 48-1, *Mik Depo.*, 10/31/14, Page ID #452-53, pp. 188-89). The Miks testified, throughout their depositions, that they repeatedly attempted to purchase the property, first from Ms. Meyer, then at the judicial sale, then from CitiMortgage, and finally from Defendant. (Doc. 47-1, *Mik Depo.*, 9/9/14, PAGE ID #313-14, pp. 107-112, Page ID #316-31, pp. 117-78); (Doc. 48-5, *Mik Depo.*, 10/31/14, Exs. 4, Page ID #637); (Doc. 48-13, *Mik Depo.*, 10/31/14, Ex. 12, Page ID #656-70).

When Paul Mik finally realized eviction was imminent, he sought financing to purchase the property upon a loan application that valued the property and contiguous lots tens of thousands of dollars higher than any investment he had made in them. When the full circumstances are taken into account, it is clear that the arrangement between the Miks and Wanda Meyer was not an "arm's length transaction." Kentucky courts have held that a reviewing court should look to "[t]he purpose, rather than the name given a contract by the parties, … and the court will give effect to the real and dominant intention of the parties when definitely ascertained." *Trinity Temple Charities, Inc. v. Louisville*, 188 S.W.2d 91, 94 (Ky. 1945). *See also Greater Louisville First Federal Sav. & Loan Asso. v. Etzler*, 659 S.W.2d 209, 212-13 (Ky. App. 1983) ("It is evident from the case record that the Etzlers and Coleman acted, for all practical purposes, like sellers and buyers of the property.").

When the full situation is reviewed, it is clear that Plaintiffs were not "bona fide tenants" under the PTFA. Therefore, Defendant is entitled to summary judgment on Plaintiffs' wrongful eviction claim.

## **CONCLUSION**

Plaintiffs were not *bona fide* tenants under the PTFA because PALS did not occupy the property, because the Miks were neither party to any lease with Wanda Meyer, nor subtenants or assignees under any lease, and because Plaintiffs failed to make all of the required rental payments. Moreover, the Miks acted at all times as though they were acquiring the property, not renting it.

In addition, the Miks waived any PTFA rights they might have had upon their signing of the Cash for Keys Agreement, and then they released all causes of action they might have had against Defendant upon their later purchase of the property from Defendant.

The Sixth Circuit has held that Defendant's eviction of the Miks complied with Kentucky law. The PTFA does not change that result. There exist no genuine issues of material fact, and Defendant is entitled to summary judgment as a matter of law. Therefore, this Court should dismiss this action with prejudice.

Respectfully submitted,

  /s/  Rick D. DeBlasis
Rick D. DeBlasis   (KBA #92846)
Cynthia M. Fischer   (admitted *Pro Hac Vice*)
LERNER, SAMPSON & ROTHFUSS
120 East Fourth Street, Suite 800
Cincinnati, Ohio  45202
PH: (513) 412-6614 // FX: (513) 354-6765
rdd@lsrlaw.com

*Attorneys for Defendant,
Federal Home Loan Mortgage Corporation*

## **CERTIFICATE OF SERVICE**

On December 1, 2016, I electronically filed this document through the Court's ECF system, which will send notice of electronic filing to:

Hon. B. Ballard Rogers (ballard@ballardrogerslaw.com)
BALLARD ROGERS LAW OFFICE, PLLC
539 W. Market Street, Suite 300
Louisville, Kentucky 40202

                                               */s/ Rick D. DeBlasis*
                                               Rick D. DeBlasis   (KBA #92846)